# 18-1468-CR(L)

## 18-1916-CR(MEM), 18-2795-CR(MEM)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

TAMMY M. MARTIN,

*Defendant,*

*and*

CLIF J. SEAWAY, TAMMY J. LAMERE,

*Defendants-Appellants.*

_____

*On Appeal from the United States District Court
for the Northern District of New York*

## BRIEF FOR DEFENDANT-APPELLANT
## TAMMY J. LAMERE

ROBERT G. WELLS
*Attorneys for Defendant-Appellant
  Tammy J. Lamere*
120 East Washington Street, Suite 825
Syracuse, York, New York 13202
315-472-4489

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTIONAL STATEMENT RULE 28(A), F.R.A.P. ....................................1

QUESTIONS PRESENTED.......................................................................2

STATEMENT OF THE CASE.....................................................................2

OVERVIEW ......................................................................................2

SUMMARY OF THE ARGUMENT .............................................................4

ARGUMENT ......................................................................................5

    POINT ONE

    TAMMY'S SENTENCE WAS PROCEDURALLY
    UNREASONABLE, BECAUSE THE COURT IMPROPERLY
    APPLIED THE 4-POINT S&M ENHANCEMENT .........................................6

    POINT TWO

    TAMMY'S SENTENCE WAS SUBSTANTIVELY
    UNREASONABLE AND WAS GREATER THAN
    NECESSARY TO ACCOMPLISH THE GOALS OF
    SENTENCING...............................................................................11

CONCLUSION...................................................................................21

FRAP 32 CERTIFICATION ...................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Atkins v. Virginia,
   536 U.S. 304 (2002).................................................................................16, 17

Gall v. United States,
   552 U.S. 38 [2007]..............................................................................................5

United States v. Brown,
   843 F.3d 74 (2d Cir. 2016) ..............................................................................5, 6

United States v. Cover,
   800 F.3d 275 (6th Cir. 2015) ................................................................................9

United States v. Delmarle,
   99 F.3d 80 (2d Cir. 1996) ..................................................................................8, 9

United States v. Dorvee,
   616 F.3d 174 (2d Cir. 2010) .......................................................................*passim*

United States v. Freeman,
   578 F.3d 142 (2d Cir. 2009) .........................................................................6, 8, 9

United States v. Groenendal,
   557 F.3d 419 (6th Cir. 2009) ................................................................................9

United States v. Jenkins,
   854 F.3d 181 (2d Cir. 2017) .........................................................................13, 19

United States v. McIntosh,
   753 F.3d 388 [2d Cir. 2014] [per curiam] ............................................................5

United States v. Rigas,
   583 F.3d 108 (2d Cir. 2009) .........................................................................6, 12

United States v. Samas,
   561 F.3d 108 (2d Cir. 2009) ..............................................................................11

United States v. Sawyer,
   672 Fed. Appx. 63 (2d Cir. 2016) (Summary Order)..................................13, 19

## Statutes

18 U.S.C. § 1291 ...................................................................................1

18 U.S.C. § 2251(a) ...........................................................................1, 2

18 U.S.S.C. § 2251(a),(e) ...................................................................1, 2

18 U.S.C. § 2256 ..................................................................................8

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 3553 .........................................................................6, 13, 17

18 U.S.C. § 3553(a) .........................................................................6, 11

18 U.S.C. § 3553(a)(1) .........................................................................11

18 U.S.C. § 3553(a)(2) .........................................................................11

18 U.S.C. § 3553(a)(5) .........................................................................12

18 U.S.C. § 3553(a)(6) .........................................................................12

18 U.S.C. § 3742(a) ...............................................................................1

U.S.S.G. Part A, cmt 2 ..........................................................................7

U.S.S.G. § 2G2.1(b)(4) .........................................................................9

U.S.S.G. § 2G2.1(b)(4)(A) ..............................................................2, 8, 10

U.S.S.G. § 2G2.2(b)(4) ......................................................................8, 9

U.S.S.G. § 3d1.1(b) ...............................................................................7

## Rules

F.R.A.P. RULE 28(a) ..............................................................................1

## Other Authorities

Webster's Third New International Dictionary .......................................8

**JURISDICTIONAL STATEMENT RULE 28(a), F.R.A.P.**

This is an appeal from a final judgment of the United States District Court for the Northern District of New York, (Norman A. Mordue, Judge), entered June 22, 20185, under Docket Number 5:16 Cr. 340 (NAM), convicting Defendant-Appellant, Tammy J. Lamere, after a plea of guilty, of Conspiracy to Sexually Exploit a Child in violation of 18 U.S.C. § 2251(a) & (e) and of Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a), and sentencing her principally to serve 30 years' imprisonment on each count to run concurrently and 15 years of Supervised Release. She is incarcerated. Jurisdiction in the District Court was pursuant to 18 U.S.C. § 3231.

A Notice of Appeal was filed through undersigned counsel, on June 25, 2018. See A96[1]. Jurisdiction in this Court is conferred pursuant to 18 U.S.C. §§ 1291 and 3742(a) .

---

[1]Citations to "A __" are to the Appendix.

1

## QUESTIONS PRESENTED

1.      Was the Defendant-Appellant's sentence procedurally unreasonable, where the sentencing court applied the 4-point S&M enhancement under U.S.S.G. §2G2.1(b)(4)(A)?

2.      Was the Defendant-Appellant's sentence to the maximum prison term on each count to run concurrently substantively unreasonable?

## STATEMENT OF THE CASE

### OVERVIEW

Tammy pleaded guilty before Judge Norman A. Mordue  on December 18, 2017, to the crimes of Conspiracy to Sexually Exploit a Child, in violation of 18 U.S.C. §2251(a),(e), and of Sexual Exploitation of a Child, in violation of 18 U.S.C. §2251(a).  Tammy was sentenced principally to 30 years' imprisonment on each count to run concurrently and 15 years of Supervised Release.

Law enforcement was alerted to the fact that codefendant Clif Seaway had images and videos of children engaged in sexual acts with adults.  Upon searching Seaway's home pursuant to a warrant, law enforcement seized numerous items of electronic media.  Review of those items revealed that Seaway had produced numerous files of child pornography, primarily by hiimself or with his wife, but also

2

numerous times with Tammy.

Tammy, who has a full-scale IQ in the range of 65-68, thus qualifying as mentally retarded, first got to know Seaway and his wife through a perfectly legal and legitimate online game. Whereas Seaway and his wife had been sexually abusing their children for several years by the time they met Tammy, Tammy had never abused a child. She had been arrested only once, years earlier, for the misdemeanor of attempting to offer a false instrument in the second degree when she alleged lied on an application for benefits.

When Tammy finally met Seaway, she became enamored with him, still not knowing that he had been abusing his children for years. Eventually, Tammy met Seaway's V3, and Seaway, taking advantage of Tammy's intellectual deficits, low self-esteem, and love for him, persuaded Tammy to engage in sexual conduct with V3 when V3 was only five years old. Tammy and Seaway would video and photograph each other engaging in sexual conduct with V3. Although the videos and images of Tammy with V3 showed Tammy inserting her finger into V3's vagina on one occasion and showed V3 performing fellatio on Seaway, by herself and with Tammy, there was no vaginal or anal penetration by Seaway's penis. There is no evidence that any of those images or videos were ever distributed or otherwise shared through the internet or though any other media.

3

Tammy confessed to law enforcement following her arrest and has been incarcerated since. Tammy pleased guilty to both counts with which she was charged. In calculating her sentencing Guidelines, probation and the district court both applied a four-level increase for engaging in sadistic or masochistic conduct with V3. Because of that, they calculated her total offense level at 43, which resulted in an advisory Guideline sentence of life, even though she had zero criminal history points.

Noting that tammy never would have engaged in such conduct had it not been for Seaway's influence, the district court sentenced Tammy to the maximum term of thirty years' imprisonment on each count, but ordered that they run concurrently with each other.

A Notice of Appeal was timely filed on June 22, 2018, <u>see</u> A968, and this appeal ensued.

## <u>SUMMARY OF THE ARGUMENT</u>

Tammy's sentence was unreasonable, procedurally and substantively, and, therefore, must be vacated. Her sentence is procedurally unreasonable because the district court erroneously applied the four-level S&M enhancement. Unlike vagina or anal penetration by an adult penis, neither digital penetration nor oral sex is

inherently painful or sadistic.

Tammy's sentence is substantively unreasonable, because, given her physical ailments and, more importantly, her intellectual deficits, coupled with her relative culpability, the sentence of thirty years was far greater than necessary to accomplish the goals of sentencing.

This Court should vacate Tammy's sentence, because the sentence imposed is substantively unreasonable and greater than necessary to accomplish the goals of sentencing.

## **ARGUMENT**

The Tammy's sentences must be vacated, as they are both procedurally and substantively unreasonable. This Court's "'review of criminal sentences includes both procedural and substantive components and amounts to review for abuse of discretion.'" United States v. Brown, 843 F.3d 74, 80 (2d Cir. 2016) (quoting United States v. McIntosh, 753 F.3d 388, 393-94 [2d Cir. 2014] [per curiam]). In reviewing the sentence for reasonableness, this Court "'must first ensure that the district court committed no significant procedural error.'" Brown, 843 F.3d at 80 (quoting Gall v. United States, 552 U.S. 38, 51 [2007]). A procedural error can take many forms, including, but not limited to, a miscalculation of the guidelines by the district court, a failure of the district court adequately to explain the basis for the sentence imposed,

5

and failure by the district court to consider properly the §3553(a) factors. See Brown, 843 F.3d at 80.

Once this Court is satisfied that there exists no procedural error and, therefore, that the sentence is not procedurally unreasonable, it will then review the substantive reasonableness of the sentence. This Court has said that "substantive reasonableness review is intended to 'provide a backstop' against sentences that are 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law.'" United States v. Dorvee, 616 F.3d 174, 183 (2d Cir. 2010) (quoting United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009). In this case, the sentence is unreasonable, both procedurally and substantively.

## POINT ONE

## TAMMY'S SENTENCE WAS PROCEDURALLY UNREASONABLE, BECAUSE THE COURT IMPROPERLY APPLIED THE 4-POINT S&M ENHANCEMENT.

Tammy's sentence is procedurally unreasonable for several reasons: the district court miscalculated the guidelines by applying a 4-point S&M enhancement; the district court did not adequately explain its reasons for the sentence; and the district court did not properly consider the §3553 factors. Because Tammy is challenging the district court's interpretation and application of the Guidelines, this Court reviews this claim *de novo*. United States v. Freeman, 578 F.3d 142, 145 (2d Cir. 2009).

6

The PSR in this case calculated Tammy's total offense level as 43. (PSR ¶¶42-55.) First, probation grouped the two counts under U.S.S.G. §3d1.1(b) "because one count charges conspiracy and the other charges the substantive offense over the same time period." (PSR ¶42.) Thus, probation found that the base offense level was 32 and then opined that it should be a"increased by 4 levels because the offense involved a minor who had not attained the age of twelve years." (PSR ¶¶ 43-44.) To that, probation added 2 "because the offense involved the commission of a sexual act or sexual contact," (PSR ¶45), and another 4 "because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence," which was based on the fact that Tammy and her co-defendant, Mr. Seaway, "produced material of five-year-old V3 performing oral sex on Seaway [sic] and LaMere penetrating eight-year-old V3's vagina with her finger." (PSR ¶46.) Her offense level was then decreased by 3 levels for acceptance of responsibility, (PSR ¶¶51-52), before being increased by 5 levels for engaging in a pattern of activity involving prohibited sexual conduct with a minor on at least two occasions, (PSR ¶54).

Although this resulted in an offense level of 44, by operation of the Guidelines, it was reduced to 43. (PSR ¶55; U.S.S.G. Part A, cmt 2.) Even with a Criminal History Category of I, a total offense level of 43 results in an advisory guideline sentence of life. As correctly noted by probation in the PSR, however, "as no count

of conviction carries a potential life sentence and the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range, the guideline range becomes 720 months (or 60 years), which is the combined length of the authorized maximum sentences in this case." (PSR ¶87.) The sentencing court adopted this guideline calculation, including the 4-point S&M enhancement under U.S.S.G. §2G2.1(b)(4)(A). (A84.)

Under that section, the court is advised to increase the offense level by 4 levels "[i]f th offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." U.S.S.G. §2G2.1(b)(4)(A). As has been noted by virtually every court to address this issue, however, the guidelines do not define the terms "sadistic," "masochistic," or "depictions of violence." See, e.g.,United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996); see 18 U.S.C. §2256. This Court, therefore, like every other, has turned to the dictionary definitions of these terms. See Delmarle, 99 F.3d at 83 (resorting to *Webster's Third New International Dictionary).* This Court has held, therefore, that "where a sentencing court finds, by a preponderance of the evidence, that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused the minor pain, it need make no further findings in order to impose a four-level enhancement under §2G2.2(b)(4)." Freeman, 578 F.3d at 147-48. Section 2G2.2(b)(4) is identical to §2G2.1(b)(4).

8

Based on this definition, courts have held that vaginal or anal penetration of a prepubescent minor by an adult penis is per se "sadistic," because it would have to cause pain. See Freeman, 578 F.3d at 144-45; see also United States v. Groenendal, 557 F.3d 419, 425 (6th Cir. 2009) (collecting cases).

The evidence against Tammy, however, did not include vaginal or anal penetration of the admittedly prepubescent V3 with an adult penis. Rather, this case involved digital penetration of her vagina only with Tammy's finger. While undoubtedly deplorable, vaginal penetration with a finger is much different than penetration with an adult penis. While the latter is unquestionably painful for a prepubescent minor, the former is not necessarily so. There is no indication from the record that Tammy's finger in any way is comparable in length or girth to an adult penis. Cf. Delmarle, 99 F.3d at 83 (explaining that in that case "[i]t is also plain that a cylindrical object, of a circumference sufficiently substantial to make it quite likely to cause pain to one so young, is being inserted by an adult hand int the child's anus"). And certainly, fellatio, even with a prepubescent minor, is not inherently painful for the child. Cf. United States v. Cover, 800 F.3d 275, 280 (6th Cir. 2015) (finding that "[i]t is very culpable to have and distribute an image depicting a 13-year old or younger victim engaged in oral sex with a man, but such a depiction is not automatically – without more –sadistic"). Thus, although vaginal and anal

9

penetration of a prepubescent child by an adult penis may rightly be deemed sadistic per se, the conduct and images on which the enhancement was based in this case are not. Because the conduct and images on which probation and the district court relied for this enhancement are not inherently sadistic and because neither the court nor probation otherwise explained its basis for applying this enhancement, it was procedural error to include the four-level enhancement under U.S.S.G. §2G2.1(b)(4)(A) in this case.

The four-level increase in this case was extremely prejudicial. Absent those four points, Tammy's total offense level would have been 40, not 43. Whereas the Guidelines advisor sentence at level 43 is life, the advisory sentencing range at level 40, with a Criminal History Category of I, is 292-365 months. In this case, Tammy received a sentence of 360 months on both counts to run concurrently with each other. Thus, her sentence was 68 months above the Guideline minimum and only five months below the Guideline maximum. Thus, also 360 months may have seemed to the judge to be a drastic downward variance from an advisory sentence of life at offense level 43, it is actually at the top of the advisory sentence at offense level 40. That is, as in <u>United States v. Dorvee</u>, "[it] appears that the district court believed it was imposing a non-Guidelines sentence when, in fact, it selected a sentence conforming exactly to the Guidelines." 616 F.3d 174, 181-82 (2d Cir. 2010). And

10

at the top of the Guidelines at that.

Accordingly, Tammy's sentence must be vacated and the matter must be remanded to the district for *de novo* re-sentencing.

## POINT TWO

## TAMMY'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE AND WAS GREATER THAN NECESSARY TO ACCOMPLISH THE GOALS OF SENTENCING.

The sentence ultimately imposed on Tammy, was substantively unreasonable. Moreover, the sentence was far greater than necessary to accomplish the goals of sentencing. This Court has recognized that "[e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the § 3553(a) sentencing factors." United States v Dorvee, 616 F.3d 174, 182 (2d Cir. 2010). Section 3553(a) contains a "parsimony clause," requiring the court to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. § 3553(a)(2)." Id. (quoting United States v. Samas, 561 F.3d 108, 110 (2d Cir. 2009). Thus, "[i]n applying § 3553(a) and its parsimony clause, the court must look to 'the nature and circumstances of the offense and the history and character of the defendant.'" Dorvee, 616 F.3d at 183 (quoting 18 U.S.C. § 3553[a][1]). The sentencing court also must also look to "'the need to

11

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,' 18 U.S.C. § 3553(a)(6), and the Guidelines themselves, 18 U.S.C. § 3553(a)(5)." <u>Dorvee</u>, 616 F. 3d at 183.

This Court has said that "substantive reasonableness review is intended to 'provide a backstop' against sentences that are 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law.'" <u>Dorvee</u>, 616 F.3d at 183 (quoting <u>United States v. Rigas</u>, 583 F.3d 108, 123 (2d Cir. 2009). Moreover, despite this seemingly high standard, this Court has "cautioned against converting review for substantive 'reasonableness into a "rubber stamp.'"" <u>See</u> <u>Rigas</u>, 583 F.3d at 122. Judged by this standard, the sentence ultimately imposed on Tammy was substantively unreasonable.

The district court effectively sentenced Tammy, a 46-year old woman whose full scale IQ as determined by experts by both the defense and the Government qualifies her as mentally retarded, now referred to as intellectually disabled, and who was in special education classes from second grade until she dropped out of school, pregnant, in the ninth grade, to die in prison. This sentence is substantively unreasonable.

The crimes to which Tammy pleaded guilty are inexcusable, abhorrent, and worthy of a lengthy prison sentence. That, however, and the goals of sentencing

generally, could readily have been accomplished in this case with a sentence of 15 years' imprisonment followed by a lengthy, and strict, term of supervised release. Indeed, where two sentences equally serve the statutory purpose of §3553, the district court must impose the lower.  See Dorvee, 616 F.3d at 184.

In Dorvee, United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), and United States v. Sawyer, 672 Fed. Appx. 63 (2d Cir. 2016) (Summary Order), this Court concluded that the sentences were substantively unreasonable .  They provide strong support for the argument that Tammy's sentences are, likewise, substantively unreasonable.  Even though the sentences were ordered to run concurrently, Tammy was sentenced to the statutory maximum of 360 months on each count.  An examination of the characteristics of Tammy, the facts of this case, and the goals of sentencing establishes that those sentences are substantively unreasonable.

As explained by defense counsel in his sentencing submission, Tammy is "a submissive, docile, compliant, and cowering child who resides within the morbidly obese, diseased body of a forty-seven-year-old woman." (A67.)  She was an only child and always overweight.  As noted in the Forensic Evaluation dated March 30, 2018, she was often bullied by peers, picked on, and felt like she didn't fit in

anywhere. (Comp. Eval. at 2.)[2]

She was either in special education classes or receiving special education services from second grade until she left school after the ninth grade. In fact, she was held back in the second grade. In hindsight, this is not surprising given her full-scale IQ in the range of 65-68, which corresponds to mental retardation or, as it is now referred to, intellectual disability. (A67-68.) When she was only 12 years old, her father passed away. (PSR ¶62.)

Tammy dropped out of school after only one year of high school because she was pregnant. Notably, Tammy got pregnant twice before she had attained the age of consent. In fact, she was only fifteen years old when she gave birth to a stillborn child. The next year, she gave birth to her son.

She married the father of her son when she was 18 years old. (Comp. Eval. at 3.) The relationship quickly deteriorated, with her husband not only cheating on her constantly but also pressuring her to have sex against her will, "once being after she was recovering from a hysterectomy." (Comp. Eval. at 3; PSR ¶64.) He was also physically abusive in other ways. One time, he hit her so hard, he broke her eardrum." (PSR ¶64.)

---

[2]References to "Comp. Eval at –" are to the court ordered forensic evaluation. The report is provided to this Court under seal.

Tammy also has suffered, and continues to suffer, from numerous physical ailments detailed in the PSR.  (PSR ¶¶68-72; Comp. Eval. at 4.)  Her medical issues literally started at birth.  According to the Forensic Evaluation, "[s]he was born with bronchitis and experienced respiratory difficulties through much of her childhood." (Comp. Eval. at 4.)  She had tubes surgically implanted in her ears when she was four years old.  (Comp. Eval. at 4.)  When she was 21, Tammy was diagnosed with uterine and cervical pre-cancer."  (Comp. Eval. at 4.)  At only 26 years old, Tammy was diagnosed with Type 2 diabetes.  (Comp. Eval. at 4.)  This, no doubt, was connected to her lifelong obesity.  According to the PSR, Tammy weighs 282 lbs though she is only 5'9". (PSR ¶68.)  Shockingly, that is after losing 75 lbs since her arrest, (PSR ¶69), which places her weight at the time of her arrest at nearly 360 lbs.  In addition, Tammy has been diagnosed with organic sleep apnea, arthritis in her knees and lower back, Ulcerative Colitis, urinary incontinence, chronic cutaneous ulcer, hyperlipidemia, hypertension, Peripheral Vascular Disease, edema, Restless Legs Syndrom, and Chronic Obstructive Pulmonary Disease.  (Comp. Eval. at 4; PSR ¶¶69-71.)

Tammy's medical issues, however, are not limited to physical ailments.  She has been diagnosed with anxiety, PTSD, and depression, and has been on a host of medications.  (Comp. Eval. at 4-5; PSR ¶¶73-76.)  This, of course, is in addition to

15

her having an full-scale IQ that puts her in the 2nd percentile and within the extremely low range of cognitive functioning. (PSR ¶76; Comp. Eval. at 7.) According to the Psychological evaluation Report prepared by defense expert Thomas A. Lazzaro, Ph.D, Tammy's "appears to be an extremely compliant and suggestible woman, again no doubt due to intellectual deficits and personality traits." (Lazzaro Rep. at 4.)[3] Dr. Lazzaro also reported that Tammy's responses to tests reflected "low self-esteem, her limited self-confidence, her difficulties in forming close attachment to other people, and her impulsivity." (Lazzaro Rep. at 4.)

Thus, Dr. Lazzaro opined that Tammy's "marked cognitive deficits and pathological personality traits contributed significantly to her crimes by making her extremely vulnerable to the influence of her codefendant." (Lazzaro Rep. at 1.) Importantly, at sentencing and in its Statement of Reasons, the district court stated its belief that Tammy was "susceptible to influence of a pedophile, Clif Seaway, and that there's no indication that [she] would have sexually exploited a child had it not been for him." (A85; Doc. Entry 66.)

In Atkins v. Virginia, 536 U.S. 304 (2002), the Supreme Court recognized that although "[t]hose mentally retarded persons who meet the law's requirements for

---

[3]References to "Lazzaro Rep. at __" are to the Psychological Evaluation report prepared by Thomas A. Lazzaro, Ph.D. This report is provided to the Court under seal.

16

criminal responsibility should be tried and punished when they commit crimes[,] [b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses . . . they do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." 536 U.S. at 306. The defendant in Atkins was "mildly mentally retarded" and had a Full Scale IQ of 59. The Court recognized in Atkins, "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that become manifest before age 18." Id. at 318.

The Court acknowledged that while the mentally retarded often know right from wrong, "[b]ecause of their impairments, . . . by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions to others." Id. Particularly important when the purposes of sentencing are to be considered under 18 U.S.C. § 3553, the Court explained that "[w]ith respect to retribution–the interest in seeing that the offender gets his 'just desserts'–the severity of the appropriate punishment necessarily depends on the culpability of the offender." Id. at 319. The Court concluded, therefore, that due to their diminished culpability, the mentally retarded can not be subject to the

death penalty. The Court then turned to deterrence, concluding that the deterrence rationale faired no better than the retribution rationale. The Court reasoned that "it is the same cognitive and behavioral impairments that make these defendants less morally culpable–for example, the diminished ability to understand and process information, to learn from experience, to engage in logical reasoning, or to control impulses–that also make it less likely that they can process the information of the possibility of execution as a penalty and, as a result, control their conduct based on this information." Id. at 320. Although the death penalty is not one of the sentencing options available to the Court, this same diminished moral culpability should still be very relevant to this Court's determination of the substantive reasonableness of the sentence imposed in this case.

Tammy's intellectual deficits and physical ailments have resulted in her inability to maintain employment. She has had three jobs in her entire life, and none of them have lasted more than a few months. She has been dependent on Social Security Disability to support herself since she was only 23 years old. (PSR ¶80; Comp. Eval. at 3.)

As explained above, Tammy first met co-defendants Clif Seaway and his wife Tammy Martin through an online game. She had no idea at that time that Seaway and Martin had been sexually abusing their children practically since their children were

18

born.  The mentally retarded morbidly obese woman with the low self-esteem, who

has difficulties in forming close attachments to people, fell for codefendant Seaway.

Seaway was a predator and Tammy was his prey.  He used her and knew that she

would do anything to please him and maintain their relationship.  It should be noted

that Seaways sexual abuse was not limited to children.  He forced his wife to have sex

with the  family dogs on numerous occasions.  (PSR ¶29.)  One can only imagine the

influence, then, that he would have, over somebody like Tammy.  The district court's

acknowledgment that Tammy never would have sexually exploited a child if not for

Seaway is an understatement.  Thus, even though the defendants in <u>Dorvee</u>, <u>Jenkins</u>,

and <u>Sawyer</u> did not have sexual contact with any children, this distinction should

carry little weight between this case and <u>Dorvee</u>, <u>Jenkins</u>, and <u>Sawyer</u> ought to carry

little weight.  In fact, all things considered, Tammy compares favorably to the

defendants in those cases.

She is arguably not as culpable as any of those defendants.  Also, although

many photos were taken, there is no indication that any of them were distributed on

the internet for millions to see.  There is no indication that Tammy ever viewed them

or showed them to anybody.

In addition, although tammy was charged with, and pleaded guilty to,

conspiracy to sexually exploit a child, in addition to the substantive offense of

sexually exploiting a child, the two offenses were really one and the same. There was no "agreement" outside the conduct itself. That is, the exact same conduct that proved the conspiracy proved the substantive offense. Thus, the fact that she received concurrent sentences is likely more a reflection of the fact that the charges are indistinguishable on the facts of this case, than mercy on the part of the district court.

The goals of sentencing would be served just as well with a sentence of 15 years' imprisonment followed by a lengthy and strict term of Supervised Release. Tammy is not a predator. She would not have sexually exploited a child were it not for the influence of her sadistic, pedophile codefendant. She never sought out or distributed child pornography. Thus, Tammy does not present a significant danger to the community. Respect for the law is not demonstrated by locking up Tammy for thirty years. In fact, given her significant physical and mental ailments, Tammy likely would never survive to see her freedom.

## **CONCLUSION**

For all of the reasons set forth herein, Tammy respectfully requests this Court

vacate her sentences and remand to the district court for re-sentencing *de novo*.


DATED: March 15, 2019

Respectfully submitted,

/s/ Robert G. Wells
_____

Robert G. Wells
Attorney for Defendant-Appellant
Tammy J. Lamere
120 East Washington Street, Suite 825
Syracuse, N.Y.  13202
315-472-4489
Dfndr@hotmail.com

21

## **CERTIFICATION**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, Robert G. Wells, counsel of record for Defendant-Appellant Tammy Lamere, hereby certifies that the foregoing brief for Tammy is in compliance with the type-volume limitations set forth in F.R.A.P. 32(a)(7)(B), in that it contains 4421 words as measured by the word processing program utilized to prepare the brief.

DATED:    NEW YORK, NEW YORK

             MARCH 15, 2019

                                    /S/ Robert G. Wells
                                    _____
                                    Robert G. Wells