# 18-1468(L)

*To be Argued by:* THOMAS R. SUTCLIFFE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
**Docket Nos. 18-1468 (L), 18-1916 (con), 18-2795 (con)**

UNITED STATES OF AMERICA,
*Appellee,*

v.

TAMMY M. MARTIN,
*Defendant,*

CLIF J. SEAWAY, TAMMY J. LAMERE,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

GRANT C. JAQUITH
*United States Attorney for the*
  *Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Thomas.Sutcliffe@usdoj.gov

LISA M. FLETCHER
THOMAS R. SUTCLIFFE
*Assistant United States Attorneys*
  *of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES
PRESENTED ................................................. 1

STATEMENT OF THE CASE .......................... 2

    A.  Introduction. ..........................................2

    B.  Procedural History. ...............................3

STATEMENT OF FACTS ................................. 5

    A.  Search Warrant for Seaway's
       Residence. ................................................5

    B.  Execution of Search Warrant
       and Discovery of Child
       Pornography. .........................................10

    C.  Seaway's Motion to Suppress
       and the District Court's
       Decision. ................................................11

    D.  LaMere's and Seaway's
       Convictions. ..........................................13

    E.  LaMere's Presentence
       Investigation Report. ...........................13

    F.  LaMere's Sentencing. .........................17

SUMMARY OF ARGUMENT ......................... 19

ii

ARGUMENT ....................................................... 21

POINT I:

The District Court Did Not Err by
Denying Seaway's Motion to
Suppress. ....................................................... 21

A. Governing Law. ...................................... 21

B. Standard of Review. ............................ 24

C. Discussion. ............................................ 25

   1. There was a substantial
     basis for Judge Todd to
     conclude that there was
     probable cause to search
     Seaway's home. ............................. 25

      a. Raymond's testimony
        was sufficiently reliable. ........ 25

      b. The warrant application
        did not improperly
        exclude material
        information. .............................. 30

      c. Raymond's affidavit does
        not conflict with Eckler's
        affidavit. ................................... 35

   2. The good-faith exception to
     the exclusionary rule applied
     here. ................................................. 37

iii

POINT II:

    The District Court Did Not Commit
Error, Plain or Otherwise, By
Applying U.S.S.G. § 2G2.1(b)(4) at
LaMere's Sentencing. ............................... 39

    A.  Governing Law.....................................39

    B.  Standard of Review.............................41

    C.  Discussion. ...........................................43

POINT III:

    LaMere's Sentence Was
Substantively Reasonable. ....................... 49

    A.  Governing Law and Standard
of Review. ............................................49

    B.  Discussion. ...........................................49

CONCLUSION..................................................54

iv

# TABLE OF AUTHORITIES

**Cases:**

*Bailey v. United States,*
    516 U.S. 137 (1995) .......................................... 33

*Callanan v. United States,*
    364 U.S. 587 (1961) ......................................... 51

*Davis v. United States,*
    564 U.S. 229 (2011) ................................... 22, 23

*Franks v. Delaware,*
    438 U.S. 154 (1978) ............................. 31, 32, ,33

*Golino v. City of New Haven,*
    950 F.2d 864 (2d Cir. 1991) ............................ 37

*Herring v. United States,*
    555 U.S. 135 (2009) ......................................... 23

*Illinois v. Gates,*
    462 U.S. 213 (1983) ...................................passim

*Puckett v. United States,*
    556 U.S. 129 (2009) ......................................... 42

*Texas v. Brown,*
    460 U.S. 730 (1983) ......................................... 21

*United States v. Bloom,*
    366 F. App'x 285 (2d Cir. 2010)...................... 52

*United States v. Brown,*
    843 F.3d 74 (2d Cir. 2016) ......................... 50, 52

v

*United States v. Broxmeyer*,
  699 F.3d 265 (2d Cir. 2012) ............................ 52

*United States v. Burston*,
  159 F.3d 1328 (11th Cir. 1998) ........................ 33

*United States v. Canfield*,
  212 F.3d 713 (2d Cir. 2000) ...................... 22, 33

*United States v. Cavera*,
  550 F.3d 180 (2d Cir. 2008) ............................ 49

*United States v. Clark*,
  638 F.3d 89 (2d Cir. 2011) ........................ 23, 38

*United States v. Coates*,
  462 F. App'x 199 (3d Cir. 2012) ...................... 48

*United States v. Comeaux*,
  445 F. App'x 743 (5th Cir. 2011) .................... 47

*United States v. Comer*,
  565 F. App'x 729 (10th Cir. 2014) .................. 37

*United States v. Corp*,
  668 F.3d 379 (6th Cir. 2012) .................... 43, 47

*United States v. Cortez*,
  449 U.S. 411 (1981) ........................................ 22

*United States v. Cover*,
  800 F.3d 275 (6th Cir. 2015) .......................... 48

*United States v. Delmarle*,
  99 F.3d 80 (2d Cir. 1996) .......................... 44, 46

vi

*United States v Dorvee*,
    616 F.3d 174 (2d Cir. 2010) ...................... 52, 53

*United States v. Elliott*,
    893 F.2d 220 (9th Cir. 1990)........................... 27

*United States v. Elmore*,
    482 F.3d 172 (2d Cir. 2007) ................ 25, 26, 29

*United States v. Escobar*,
    462 F. App'x 58 (2d Cir. 2012)........................ 51

*United States v. Falso*,
    544 F.3d 110 (2d Cir. 2008) ...................... 22, 32

*United States v. Fermin*,
    32 F.3d 674 (2d Cir. 1994) .............................. 33

*United States v. Frady*,
    456 U.S. 152 (1982) ........................................ 42

*United States v. Freeman*,
    578 F.3d 142 (2d Cir. 2009) .......... 39, 40, 41, 44

*United States v. Ganias*,
    824 F.3d 199 (2d Cir. 2016) ...................... 22, 23

*United States v. George*,
    975 F.2d 72 (2d Cir. 1992) .............................. 23

*United States v. Giordano*,
    172 F. App'x 340 (2d Cir. 2006)...................... 32

*United States v. Haimowitz*,
    706 F.2d 1549 (11th Cir. 1983)................. 27, 33

vii

*United States v. Hall,*
312 F.3d 1250 (11th Cir. 2002)....................... 43

*United States v. Hamilton,*
548 F. App'x 728 (2d Cir. 2013)...................... 50

*United States v. Hernandez,*
85 F.3d 1023 (2d Cir. 1996) ..................... 26, 27

*United States v. Hewitt,*
326 F. App'x 756 (5th Cir. 2009) ................... 48

*United States v. Holt,*
510 F.3d 1007 (9th Cir. 2007)....................... 43

*United States v. Irving,*
554 F.3d 64 (2d Cir. 2009) .............................. 47

*United States v. Jenkins,*
854 F.3d 181 (2d Cir. 2017) ..................... 52, 53

*United States v. Johnson,*
450 F.3d 831 (8th Cir. 2006)......................... 43

*United States v. Johnson,*
680 F. App'x 194 (4th Cir. 2017) .............. 44, 45

*United States v. Jones,*
2000 WL 357672
(2d Cir. Apr. 6, 2000) ............................... 44, 46

*United States v. Leon,*
468 U.S. 897 (1984)......................................... 22

*United States v. Levasseur,*
816 F.2d 37 (2d Cir. 1987) .............................. 33

viii

*United States v. Lyckman,*
  235 F.3d 234 (5th Cir. 2000)............................ 43

*United States v. Mandell,*
  752 F.3d 544 (2d Cir. 2014) ............................ 32

*United States v. Marcus,*
  560 U.S. 258 (2010) ......................................... 42

*United States v. Maurer,*
  639 F.3d 72 (3d Cir. 2011) .............................. 47

*United States v. McCoy,*
  692 F. App'x 17 (2d Cir.),
  *cert. denied*, 138 S. Ct. 278 (2017)................... 50

*United States v. McCrimon,*
  788 F.3d 75 (2d Cir. 2015) .............................. 42

*United States v. Morgan,*
  842 F.3d 1070 (8th Cir. 2016)......................... 45

*United States v. Nesmith,*
  866 F.3d 677 (5th Cir. 2017)........................... 40

*United States v. Norton,*
  557 F. App'x  615 (8th Cir. 2014) ................... 45

*United States v. Pappas,*
  715 F.3d 225 (8th Cir. 2013)........................... 45

*United States v. Pope,*
  554 F.3d 240 (2d Cir. 2009) ............................ 49

*United States v. Rafferty,*
  529 F. App'x 10 (2d Cir. 2013)........................ 52

ix

*United States v. Rigas*,
  583 F.3d 108 (2d Cir. 2009) ............................ 49

*United States v. Rollins*,
  522 F.2d 160 (2d Cir. 1975) ............................ 27

*United States v. Rumney*,
  867 F.2d 714 (1st Cir. 1989) ..................... 33, 34

*United States v. Salazar*,
  945 F.2d 47 (2d Cir.1991) ............................... 26

*United States v. Sawyer*,
  672 F. App'x 63 (2d Cir. 2016) ........................ 53

*United States v. Sica*,
  676 F. App'x 81 (2d Cir.),
  *cert. denied*, 138 S. Ct. 181 (2017) .................. 47

*United States v. Smith*,
  9 F.3d 1007 (2d Cir. 1993) .............................. 24

*United States v. Spellicy*,
  253 F. App'x 147 (2d Cir. 2007) ...................... 29

*United States v. Ventresca*,
  380 U.S. 102 (1965) ........................................ 24

*United States v. Verkhoglyad*,
  516 F.3d 122 (2d Cir. 2008) ............................ 49

*United States v. Viggiano*,
  433 F.2d 716 (2d Cir. 1970) ............................ 27

*United States v. Villafuerte*,
  502 F.3d 204 (2d Cir. 2007) ............................ 42

x

*United States v. Wagner*,
   989 F.2d 69 (2d Cir. 1993) .............................. 30

*United States v. Wilkinson*,
   1999 WL 1254511
   (2d Cir. Dec. 8, 1999) ................................ 44, 46

*United States v. Wright*,
   466 F.2d 1256 (2d Cir. 1972) .......................... 31

*United States v. Zucco*,
   694 F.2d 44 (2d Cir. 1982) ............ 26, 27, 30, 36

*Velardi v. Walsh*,
   40 F.3d 569 (2d Cir. 1994) ............................. 32

**Federal Statutes, Rules and Other Authorities:**

U.S. Const. amend. IV ........................................ 21

18 U.S.C. § 2(a) ................................................... 3

18 U.S.C. § 2251(a) ............................................... 3

18 U.S.C. § 2251(e)......................................... 3, 16

18 U.S.C. § 3553(a) ....................................... 49, 52

U.S.S.G. § 2G2.1(b)(1)(A)................................... 16

U.S.S.G. § 2G2.1(b)(2)(A)................................... 16

U.S.S.G. § 2G2.1(b)(4)..................................passim

U.S.S.G. § 2G2.1(b)(4)(A)................................... 16

xi

U.S.S.G. § 2G2.2(b)(4) .......................................... 39

U.S.S.G. § 4B1.5(b) ............................................. 16

U.S.S.G. § 5G1.2(d) ............................................. 17

U.S.S.G. Ch. 5, pt. A, cmt. n.2 ............................ 16

**State Statutes, Rules and Other Authorities:**

N.Y. Penal Law § 260.10(1) ................................... 9

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket Nos. 18-1468 (L),
### 18-1916 (con), 18-2795 (con)

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

TAMMY M. MARTIN,
*Defendant,*

CLIF J. SEAWAY, TAMMY J. LAMERE,
*Defendants-Appellants.*

---

## BRIEF FOR THE
## UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court erred by finding that the information in an application for a warrant to search Seaway's residence and seize electronic storage media was sufficiently reliable to issue a warrant where the warrant application included the sworn affidavit of Seaway's nephew in which the nephew described, in detail, images and videos of child pornography he viewed on Seaway's computer while residing with Seaway, and in any event, whether the executing police officers acted in good faith when they executed the warrant.

2

2. Whether the district court committed plain error by applying a four-level enhancement to LaMere's Guidelines offense level under U.S.S.G. § 2G2.1(b)(4) ("sadistic or masochistic conduct") where the images that LaMere helped to create depict her digitally penetrating an eight-year old girl and show the same victim, when she was five and then eight years old, performing oral sex on an adult male.

3. Whether the district court abused its discretion by sentencing LaMere to a 30-year term of imprisonment where the district court considered mitigating factors that LaMere's counsel cited and, based on those factors, varied downward by 30 years.

## STATEMENT OF THE CASE

### A. Introduction.

In this consolidated appeal, Defendant-Appellant Clif J. Seaway, who was convicted following a jury trial in the United States District Court for the Northern District of New York of sexually exploiting a child for purposes of producing child pornography and for conspiracy to do so, appeals his conviction (Mordue, *S.J.*) (Case No. 18-2795), and Defendant-Appellant Tammy J. LaMere, who was convicted by guilty plea on similar charges, appeals her sentence (Mordue, *S.J.*) (Case No. 18-1916). Seaway argues that the

3

district court erred by denying his motion to suppress evidence seized pursuant to a warrant and his post-warrant-execution statements, contending that the warrant was predicated on information from an unreliable informant and the statements were the fruit of an illegal search. LaMere argues that the district court erroneously concluded that her offense conduct was "sadistic or masochistic" under U.S.S.G. § 2G2.1(b)(4), and imposed a substantively unreasonable term of imprisonment.

## B. Procedural History.

On November 17, 2016, a federal grand jury in the Northern District of New York returned an indictment charging Seaway and co-defendant Tammy Martin (who is not a party to this appeal) with one count of conspiring to sexually exploit a child for purposes of producing child pornography, in violation of 18 U.S.C. § 2251(a) & (e), and three counts of sexually exploiting a child for the purpose of creating child pornography, in violation of 18 U.S.C. § 2251(a) & (e) and 2(a). S.A. 37-40 (NDNY Case No. 5:16-cr-339 (NAM)).[1] The indictment separately charged Seaway with three additional counts of child exploitation. *Id.* The same day, the grand jury returned a separate indictment charging Seaway and LaMere with one count of

---

[1] "S.A." refers to the appendix filed by Seaway. "L.A." refers to the appendix filed by LaMere.

4

conspiracy to sexually exploit a child for the purpose of producing child pornography and one count of sexually exploiting a child, and charged Seaway with three additional counts of child exploitation. *Id.* at 41-44 (NDNY Case No. 5:16-cr-340).

On February 28, 2017, Seaway moved to suppress evidence obtained when police executed a search warrant at his residence on February 23, 2016, as well as statements he made to the police that day. *Id.* at 46-52. The government filed an opposition on March 24, 2017. *Id.* at 93-106. On June 22, 2017, the district court issued a decision and order denying Seaway's motion. *Id.* at 109-117.

On September 20, 2017, the district court granted the government's motion to (1) sever the charges against Seaway from those against LaMere, and (2) consolidate the charges against Seaway in the 5:16-cr-340 matter with those against him in the 5:16-cr-339 matter. *Id.* at 118-121.

On December 14, 2017, Seaway was convicted on all counts following a four-day jury trial. *Id.* at 123-25. The district court sentenced him principally to a 360-year term of imprisonment on May 8, 2018. *Id.* at 131.

5

On December 18, 2018, LaMere pleaded guilty to both of the counts with which she was charged. L.A. 32-59. On June 18, 2018, the district court sentenced LaMere principally to two 360-month terms of imprisonment, to run concurrently. *Id.* at 90.

On May 10, 2018, Seaway filed a timely notice of appeal. S.A. 137.[2] LaMere filed a timely notice of appeal on June 25, 2018. L.A. 96.

## STATEMENT OF FACTS

## A. Search Warrant for Seaway's Residence.

On February 18, 2016, Michael R. Eckler, an investigator with the New York State Police, submitted a sworn application to Onondaga County Court Judge Donald E. Todd for a search warrant for Seaway's residence, as well as computers and other electronic storage media found therein. S.A. 58-67. In his application, Eckler attached his own affidavit and an affidavit

---

[2] As Seaway acknowledges in his brief, the notice of appeal was filed in only the 5:16-cr-339 matter. *Id.* at 137. By contrast, a notice of appeal was not filed in the 5:16-cr-340 matter until the following September. *Id.* at 138.

6

from William B. Raymond, who was Seaway's nephew. *Id.*

According to Raymond's affidavit, which stated his name and relationship to Seaway, he lived with Seaway from August 2015 until September 20, 2015. *Id.* at 66. While living together, Raymond and Seaway "worked on computers together, repairing and rebuilding them for people." *Id.* The affidavit stated that Raymond saved pictures of "old girlfriends" on Seaway's computer and showed them to Seaway. *Id.* Seaway responded that he also had pictures and told Raymond "'[g]ive me an age.'" *Id.* Raymond responded that he "'liked it all.'" *Id.* Seaway then showed him several pictures of girls who were "less than 10 years old," which Raymond, in the affidavit, claimed he was able to determine because he had young children himself. *Id.* Raymond's affidavit described two of these images, one "of a young girl about 6 years old sitting in a spread eagle position," and another of an "underage girl on her hands and knees in a doggy style pose" with her vagina exposed. *Id.* According to Raymond's affidavit, Seaway also showed him multiple videos, including one of "a naked girl approximately 5 or 6 years old laying on a bed" while "[a]n adult female was rubbing her naked chest and bare vagina" and another of a "naked girl around 11 or 12 dancing" while "rubbing herself in a way that appeared as if she was masturbating." *Id.*

7

Raymond's affidavit stated that all of these files were kept in "a folder on one of [Seaway's] hard drives that he plugs into his main computer tower." *Id.* The hard drive, Raymond explained, was "in a bronze or gold outer cover" and Seaway "keeps t[he] folder with his pictures as a hidden folder." *Id.* Raymond estimated that there were "at least 100 images and videos on his computer." *Id.*

Raymond's affidavit also stated that "[o]ne time when [he] was working on an old IBM server at [Seaway's] house," Seaway asked him "to see if there was a DVD hidden inside the server." *Id.* Seaway explained that the DVD contained images and a video of his daughter's friend who stayed the night five or six years earlier, when Seaway's daughter was 7 or 8. *Id.* Seaway told Raymond that the friend "brought over some lacey lingerie" and that Seaway at the time "thought someone was abusing her." *Id.* Seaway claimed "he was playing with" the friend, but "was not specific" about what he meant. *Id.* Raymond told Seaway he could not find the DVD. Seaway responded that it was probably in an old school bus located behind Seaway's trailer. *Id.* Raymond's affidavit stated that Seaway told him he kept "bondage items" in the bus as well. *Id.* at 66-67. Raymond believed that Seaway "ha[d] issues with young kids" because he had heard Seaway say that "these young kids are made to do these things" and are "raised this way." *Id.* at 67.

8

Raymond's affidavit also stated that he saw Seaway playing the "virtual game called 'Second Life.'" *Id.* According to Raymond, Seaway "plays this game as a 5 year old girl" and he "attaches images of naked kids to his room within this game and allows people to come into the room and view them." *Id.* Seaway played the game using the same computer on which Raymond observed the pornographic images and videos of children. *Id.* Raymond provided the password for that computer. *Id.*

In October 2015, Raymond was charged with two counts of second degree rape in state court. *Id.* at 53. The search warrant application did not refer to this arrest, but Raymond's affidavit did state that he was "locked up here at the jail" as a result of "ha[ving] a girlfriend . . . who was 13 years old." *Id.* at 66.[3] Raymond also had a 2000 conviction for felony grand theft and was purportedly arrested in 2012 "for failing to pay restitution in connection with the conviction," neither of which are referenced in Raymond's affidavit or the warrant application. *Id.* at 54.

---

[3] Raymond was eventually convicted and sentenced to five years in prison. March 29, 2018 Presentence Investigation Report for Clif Seway at ¶ 5.

9

Eckler's own supporting affidavit explained that, on January 19, 2016, Seaway's information was input into the Integrated Justice Portal, which revealed that Seaway had been arrested in 2009 in Watertown, NY for acting in a manner to injure a child under the age of 17.[4]  *Id.* at 63.  Eckler's affidavit described him thereafter contacting the Watertown Police Department and discovering that it had no record of such an arrest.  *Id.* Watertown police did indicate, however, that Seaway was the suspect in a 2005 investigation regarding the sexual abuse of an 8-year old girl.  *Id.* *Id.*   The investigation was ultimately closed, however, due to the victim being unavailable to testify before the grand jury.  *Id.*  Eckler confirmed that the address Raymond provided for Seaway matched the address on file with the New York Department of Motor Vehicles.  *Id.*

Eckler's affidavit also provided an overview of his background, his experience investigating child

---

[4] The Eckler affidavit described this arrest as being for a violation of New York Penal Law § 260.10(1), which provides that "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health."

10

pornography offenses, the mechanics of file storage and data recovery, and some general characteristics of child pornography collectors. *Id.* at 59-62. Judge Todd issued the warrant on February 18, 2016. *Id.* at 56-57.

## B. Execution of Search Warrant and Discovery of Child Pornography.

Investigators executed the search warrant on February 23, 2016. Presentence Investigation Report for Tammy LaMere ("PSR") at ¶ 9. They seized electronic storage devices from Seaway's home and discovered on them files containing child pornography, including pictures of Seaway, Martin, and LaMere in sexual poses with minor children. *Id.* at ¶¶ 9-26. Investigators gave Seaway *Miranda* warnings, questioned him while the search was underway, and showed him some of the pictures discovered during a forensic preview of the seized devices. Seaway admitted taking the pictures. *Id.* at ¶ 9. Investigators, during a forensic analysis, discovered about 6,775 files containing child pornography, with the victims' ages ranging from eleven days to ten years old. *Id.* at ¶ 10.

11

## C. Seaway's Motion to Suppress and the District Court's Decision.

On February 28, 2017, Seaway filed a motion to suppress.[5] S.A. 46-52. In it, he argued that the search warrant was not supported by probable cause because Raymond was an unreliable informant and police did not corroborate his statements. *Id.* at 48-50. In particular, Seaway claimed that "the face of the warrant application showed that Raymond's word should not be trusted" given that "[h]is very presence in jail facing charges lessens the reliability of his statements because . . . an informer who is a criminal is less reliable as a bystander with no apparent motive to testify." *Id.* at 49. Seaway argued that these flaws required that the images and videos discovered on February 23 be excluded, as well as any statements he made that day, as they were the "fruit-of-the-poisonous-tree." *Id.* at 51.[6]

---

[5] Seaway actually filed two virtually identical motions, one in Case 5:16-cr-339 and one in Case 5:16-cr-340. For ease of reference, they are referred to here as a single motion.

[6] Seaway also moved to suppress statements he made to police on the separate ground that they were involuntary. S.A 51-52. He has not raised this claim on appeal.

12

On June 22, 2017, the district court denied Seaway's motion.[7]  *Id.* at 109-117.  The court acknowledged that Raymond's incarceration "undermines his veracity to some degree" and stated that "except for confirming Seaway's address, police did not attempt to corroborate Raymond's information." *Id.* at 113.  But the court also noted that: (1) Raymond gave a "face-to-face interview with the police," (2) he "explained that he was Seaway's nephew," (3) he "gave the police [Seaway's] address, which the police confirmed," (4) he provided "a first-hand, detailed description of the conversation that led Seaway to show Raymond the photographs and videos," and (5) "Raymond gave explicit details about the photographs and videos and explained that that he knew the children were under 10 years old because he had children himself." *Id.*  Accordingly, the district court concluded that:

> Raymond's first-hand observation of the photographs and videos and his detailed descriptions of them, as well as his detailed and plausible description of the surrounding circumstances, establish the basis of his knowledge and are strong indicia of the reliability of his statement. In addition,

---

[7] The district court declined to hold an evidentiary hearing. *Id.* at 112, n. 1. Seaway does not challenge this decision on appeal.

13

Raymond's description of the manner in which Seaway stored the files is consistent with the affidavit of Investigator Eckler and provides additional indicia of reliability.

*Id.*

The district court further concluded that, "[a]though it [was] not necessary to reach the issue . . . the agents executing the warrant acted reasonably and in good faith reliance on the warrant." *Id.*

**D. LaMere's and Seaway's Convictions.**

A jury found Seaway guilty on December 14, 2017 following a four-day jury trial. *Id.* at 122-25. LaMere pleaded guilty on December 18, 2017. L.A. 32-59.

**E. LaMere's Presentence Investigation Report.**

On March 29, 2018, the probation department submitted its final Presentence Investigation Report. Based on the files found on Seaway's devices, (as well as several more found on LaMere's camera), the probation department described LaMere's offense conduct as follows:

On at least 11 occasions from 2010 to 2013, LaMere and Seaway produced

14

approximately 225 files depicting V3
engaged in sexually explicit conduct. These
depictions include LaMere and five-year-old
V3 both performing oral sex on Seaway;
LaMere lying in bed with V3 (both naked)
with V3's mouth on LaMere's breast; and
LaMere penetrating eight year-old V3's
vagina with her finger. Seaway and LaMere
also produced a video of LaMere and eight-
year-old V3 performing oral sex on Seaway.
During the video, LaMere instructs V3 to
continue performing oral sex on Seaway
alone. All of this conduct occurred when V3
was five to nine years old.

PSR at ¶ 24.

According to the PSR, LaMere, who was 47 at
the time of sentencing, was born in the Albany area
and raised by both parents until her father passed
away when she was 12. PSR at ¶¶ 62-63. LaMere
did not report any physical or sexual abuse while
growing up, and described her family and
upbringing as "'beautiful'" and "'awesome.'"
According to LaMere, she "'could not have asked
for a better family.'" *Id.* at ¶ 63.

LaMere became pregnant in the tenth grade,
causing her to leave high school. *Id.* at ¶ 78. Her
child was stillborn, though she later had a son with
the same father when she was 16. *Id.* at 64. She
and the father later married but divorced in 2008.

15

*Id.* According to LaMere, her husband was "'pushy with sex" and once broke her eardrum. *Id.* LaMere met Seaway over the internet in 2007, and they became friends. *Id.* at 66.

LaMere has been obese for most of her life and suffers from a range of medical issues. These include organic sleep apnea, ulcerative colitis, urinary incontinence, type 2 diabetes, chronic cutaneous ulcer, hyperlipidemia, hypertension, peripheral vascular disease, edema, restless leg syndrome, chronic pulmonary disease, neuropathy, bulging discs, arthritis, and hearing loss. At the time of sentencing, LaMere was taking a host of medications to treat these conditions. LaMere had a history of being treated for depression. *See id.* at ¶¶ 68-73.

As recounted in the PSR, in 2016, Dr. Thomas Lazzaro performed a psychological evaluation of LaMere at the request of defense counsel. Dr. Lazzaro concluded that LaMere was "'chronically mildly to moderately mentally retarded' and "suffered from Schizoidal Personality Disorder with Depressive and Dependent Personally Traits." *Id.* at ¶ 75. The PSR also summarized the findings from LaMere's prior court-ordered competency evaluation, which concluded that "[h]er cognitive functioning fell in the extremely low range and her full IQ score was 68" and that she had "a mild intellectual disability." *Id.* at ¶ 76.

16

LaMere's base offense level was 32. *Id.* at ¶ 43. The probation department determined that LaMere's "offense involved material that portrays sadistic or masochistic conduct or other depictions of violence," thus warranting a four-level enhancement under U.S.S.G. § 2G2.1(b)(4)(A). *Id.* at ¶ 46. It also increased the offense level an additional 4 levels "because the offense involved a minor who had not attained the age of twelve years U.S.S.G. § 2G2.1(b)(1)(A)," *id.* at 44, and an additional 2 levels "because the offense involved the commission of a sexual act or sexual contact. U.S.S.G. § 2G2.1(b)(2)(A)," *id.* at 45. The probation department then decreased her offense level by 3 levels for acceptance of responsibility, *id.* at ¶¶ 51-52, but also added 5 levels for repeated and dangerous sex offenses against minors under U.S.S.G. § 4B1.5(b). LaMere's total offense level was 43. *Id.* at ¶¶ 43-55.[8] An imprisonment range of life applies when an offender's total offense level is 43. *Id.* at ¶ 87. However, because the maximum sentence to which LaMere could be sentenced on each of the two counts to which she pleaded guilty was 30 years, 18 U.S.C. § 2251(e), the applicable Guidelines range became 60 years – i.e., the combined maximum sentence of both counts when run consecutively. *Id.* at ¶¶ 87-88; U.S.S.G.

---

[8] The sum total of the enhancements and reductions in the PSR was actually 44, but the probation department reduced it to 43 pursuant to Chapter 5, pt. A, cmt. n.2. *Id.* at ¶ 55.

17

§ 5G1.2(d). When she received a copy of the PSR, LaMere did not object to the probation department's guidelines calculations. PSR at p. 23.

## F. LaMere's Sentencing.

At LaMere's sentencing on June 18, 2018, the district court asked her counsel whether LaMere had any objections to either the factual findings or Guidelines calculations in the PSR, and counsel replied that she did not. L.A. 76-77. LaMere's counsel asked that she receive a 15-year term of imprisonment – the statutory minimum. *Id.* at 70-71, 83. Her counsel argued that a downward variance was justified because, among other issues, she "ha[d] no strong or resistant will of her own," was "mentally retarded," had multiple physical and mental ailments requiring numerous medications, had only a tenth-grade education, had "held only three jobs in her entire life," and had a modest criminal history. *Id.* at 79-81. He further argued that "but for Clif Seaway, this woman would not be here, nor would the conduct have gone on as long as it could have," insisting that Seaway was the "true monster" who took advantage of LaMere's "compromised will." *Id.* at 82.

The district court adopted the PSR's factual findings and Guidelines calculations. *Id.* at 84. The court found that "a non-Guideline sentence

18

coupled with treatment and a lengthy period of supervised release is sufficient but not greater than necessary to comply with the purposes of sentencing." *Id.* at 84-85. The court went on to state:

> After considering your background and characteristics, your immediate cooperation with the authorities, your limited criminal history, and the results of your competency evaluation which demonstrate you were susceptible to influence of a pedophile, Clif Seaway, and that there's no indication you would have sexually exploited a child had it not been for him, I've also considered the number of times you participated in the victimization of victim 3, from 2010 to 2013, and I find based on the totality of the circumstances, the sentence that I'm about to impose reflects the seriousness of your offense and provides just punishment for your conduct, while promoting respect for the law, and avoiding unwarranted sentencing disparities.

*Id.* at 85.

The district court sentenced LaMere to a term of 30 years imprisonment on each count, to run concurrently. *Id.* at 85.

19

# SUMMARY OF ARGUMENT

This Court should affirm the district court's denial of Seaway's motion to suppress.

The district court correctly found that Judge Todd had a substantial basis for concluding that the information in the warrant application establishing probable cause for a warrant to search Seaway's residence was sufficiently reliable. The warrant application included the affidavit of Seaway's nephew, William Raymond, in which he described what appeared to be child pornography on Seaway's computer. Raymond's name was known to investigators. His statement was under oath, based on his personal observations, and highly specific as to both the images he saw and the circumstances that lead to his viewing them.

Contrary to what Seaway argues (for the first time) on appeal, there is no indication that investigators knowingly withheld material information from the warrant application. Seaway, on appeal, faults investigators for failing to disclose Raymond's second degree rape charges, 2000 larceny conviction, and 2012 arrest for failure to pay restitution. But Raymond's affidavit stated that he was "locked up here at the jail" as a result of "ha[ving] a girlfriend . . . who was 13 years old," S.A. 66, thus giving notice that he had been arrested for a serious offense. Furthermore,

20

nothing in Raymond's criminal history undercuts the probable cause showing.

Even had it been error to rely on the information in Raymond's affidavit, denial of Seaway's motion to suppress was still appropriate under the good faith doctrine. Raymond's affidavit was replete with details concerning specific conversations and images, and thus bore no resemblance to "bare bones" affidavits upon which courts have held executing officers cannot justifiably rely.

This Court should likewise affirm the 30-year term of imprisonment the district court imposed on LaMere.

Because LaMere did not object before or during sentencing to the four-level sadistic conduct enhancement under U.S.S.G. § 2G2.1(b)(4), her procedural unreasonableness claim is subject to plain error review on appeal. LaMere has failed to establish error, much less plain error. The images for which LaMere is criminally responsible include depictions of LaMere digitally penetrating an eight-year old female and the victim, at ages five and eight, performing oral sex on Seaway, an adult male. This was sufficient for application of the enhancement.

LaMere's sentence was not substantively unreasonable. The district court considered

21

mitigating factors that LaMere identified at sentencing, and based on those factors, varied downward by 30 years.

**ARGUMENT**

**POINT I: The District Court Did Not Err by Denying Seaway's Motion to Suppress.**

**A. Governing Law.**

The Fourth Amendment's Warrant Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to seized." U.S. Const. amend. IV. In determining whether probable cause supports a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Such determinations must be approached in a practical way, *id.*, because "probable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). "The process does not deal with hard certainties, but with probabilities . . . . [T]he evidence . . . must be seen and weighed not in terms

22

of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Gates*, 462 U.S. at 231-32 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "When the affidavit in support of [a] search warrant is based on information obtained from a[n] . . . informant, courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *Gates*, 462 U.S. at 238) (internal quotation marks and citation omitted)).

Even where a search or seizure violates the Fourth Amendment, the evidence thus obtained may be used in a criminal prosecution if the executing officers reasonably and in good faith relied on the warrant. *See, e.g.*, *United States v. Ganias*, 824 F.3d 199, 236 (2d Cir. 2016); *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) ("In *United States v. Leon*, [468 U.S. 897, 922 (1984)] the Supreme Court held that the exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently deemed invalid." (internal quotation marks omitted)). The Supreme Court has "over time applied this 'good faith' exception across a range of cases." *Davis v. United States*, 564 U.S. 229, 238 (2011). "The burden is on the government

23

to demonstrate the objective reasonableness of the officers' good faith reliance" on an invalidated warrant. *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992). There are four situations in which the good faith exception to the exclusionary rule does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citation omitted).

In addition, "evidence will be suppressed only where the benefits of deterring the Government's unlawful actions appreciably outweigh the costs of suppressing the evidence," which is a "'high obstacle for those urging application of the exclusionary rule.'" *Ganias*, 824 F.3d at 236-37 (quoting *Herring v. United States*, 555 U.S. 135, 141 (2009)). "[W]hen the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful . . . the deterrence rational loses much of its force, and exclusion cannot pay its way." *Davis*, 564 U.S. at 238 (internal citations and quotation marks omitted).

24

## B. Standard of Review.

Where, as is the case here, the district court did not itself issue the warrant being challenged, this Court owes the district court "no particular deference." *United States v. Smith*, 9 F.3d 1007, 1011 (2d Cir. 1993) (internal quotation marks omitted). But this Court does accord deference to the finding of the judicial officer who did issue the warrant, requiring only that the magistrate have had a "substantial basis" for finding probable cause. *Id.* at 1012-13 (internal quotation marks omitted); *Gates*, 462 U.S. at 236 (issuing judge's "determination of probable cause should be paid great deference by reviewing courts" (internal quotation marks omitted)). Thus, "'[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Smith*, 9 F.3d at 1012 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

25

## C. Discussion.

### 1. There was a substantial basis for Judge Todd to conclude that there was probable cause to search Seaway's home.

#### a. Raymond's testimony was sufficiently reliable.

Seaway argues on appeal that the information in Raymond's affidavit was too unreliable to support a finding of probable cause. The district court correctly found, however, that the information in Raymond's affidavit bore sufficient indicia of reliability to give Judge Todd a "substantial basis" for issuing the search warrant.

First, Raymond's name was in the affidavit. "Where informants are known . . . a lesser degree of corroboration is required." *United States v. Elmore*, 482 F.3d 172, 180 (2d Cir. 2007). A tipster who provides his identity, after all, "allow[s] [investigators] to . . . track h[im] down later to hold h[im] accountable if h[is] tip proved false." *Id.*;[9] *see*

---

[9] *Elmore*, and some of the other cases cited below, involved *Terry* stops, where the standard is reasonable suspicion, not probable cause. For purposes of assessing the credibility of an informant, however, the analysis is the same, even

26

*also United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir.1991) ("[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false."). This concern would have been all the more salient for Raymond who, as his affidavit stated, was incarcerated.

Second, Raymond signed a sworn affidavit, meaning the information he provided was "significantly more reliable" than in the case of an unsworn informant because Raymond "testified under threat of the criminal sanction for perjury." *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996).

Third, Raymond's knowledge was based on what his affidavit described as conversations with Seaway and personal observations of the content on Seaway's computer, thus enhancing the credibility of the information. *See, e.g.*, *Gates*, 462 U.S. at 234 ("first-hand" observations one of the characteristics that "entitles [a] tip to greater weight"); *Hernandez*, 85 F.3d at 1028 (finding informant to be reliable in part because he claimed to have eye-witnessed relevant facts); *United States v. Zucco*, 694 F.2d 44, 48 (2d Cir. 1982) (stating that tips based on eye-witness accounts

---

if the threshold that must be cleared differs. *See id.* at 179 (noting similarities).

27

are "out of the ordinary" and are especially credible for Fourth Amendment purposes (internal quotation marks omitted)); *United States v. Rollins*, 522 F.2d 160, 165 (2d Cir. 1975) (testimony based on "personal observation" more reliable); *United States v. Viggiano*, 433 F.2d 716, 719 (2d Cir. 1970) ("Particular weight should be given to matters within the informant's own observation and hearing.")

Fourth, Raymond's affidavit provided a detailed account of both Raymond's interactions with Seaway and the materials that he viewed on Seaway's computer. As this Court has previously explained, "'[a] detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.'" *Hernandez*, 85 F.3d at 1028 (*quoting United States v. Elliott*, 893 F.2d 220, 223 (9th Cir. 1990)); *see also, e.g.*, *Gates*, 462 U.S. at 234 ("explicit and detailed description of alleged wrongdoing" another characteristic that entitles a tip to greater weight); *Zucco*, 694 F.2d at 48 ("[t]he specificity of [a] tip[] lends additional support to the reliability of the information provided"); *United States v. Haimowitz*, 706 F.2d 1549,1556-57 (11th Cir. 1983) (probable cause existed despite informant's criminal history where affidavit "contain[ed] detailed, firsthand information that [was] specific in its allegations, and [was] therefore 'self-corroborating'" (citation omitted)). Here, Raymond provided a vivid description of multiple images and videos that he viewed first-hand, as

28

well as the surrounding circumstances.[10]  He also
was able to describe the file folders where the
images and videos were located, the computer and
hard drive on which they were kept (including the
color of the hard drive's case), and the bus where
Seaway claimed to have stored one of his DVDs.
And Raymond recounted conversations with
Seaway.  *See* S.A 66-67.  The specificity of
Raymond's affidavit, therefore, corroborated itself.

Fifth, Raymond provided a facially plausible
explanation for why he was in Seaway's residence
and for how he obtained the information that he
did.  According to Raymond, he was Seaway's
nephew, thus making it plausible that he would
have lived with Seaway.  Raymond also claimed
that he was helping Seaway repair computers,
which would have provided an opportunity to view
and discuss computer files.  And Raymond himself
previously had at least one underage "girlfriend,"
meaning it was likely he was an individual whom

---

[10] Seaway faults Raymond for being able to
describe only "two images and two videos."
Seaway's Opening Brief at 24.  Raymond's
affidavit, however, does not purport to be an
exhaustive account of each file containing child
pornography he viewed, and even if it was, the
inability to remember every file he saw is not
surprising given that roughly five months elapsed
between the time he left Seaway's home and the
execution of the affidavit.

29

Seaway would have trusted not to reveal to the authorities what he learned. *Id.* at 66.

Finally, Eckler checked the address Raymond provided for Seaway and determined it was accurate. *Id.* at 63; *see United States v. Spellicy*, 253 F. App'x 147, 150 (2d Cir. 2007) (upholding warrant based on informant's testimony in part because investigator confirmed suspect's address). Seaway faults Eckler for not doing more to corroborate Raymond's account, but given that the key events occurred within the confines of Seaway's home, there was little more of value investigators could likely have obtained without a warrant. Furthermore, probable cause is not absent simply because investigators could have done more to corroborate the information provided by an informant. *See, e.g.*, *Elmore*, 482 F.3d at 182 (upholding finding that informant was reliable even "[i]t [was] unquestionable that [the investigator] could have done more to confirm [the informant's] identity"). To be sure, there always was the possibility that Raymond might have been less than fully candid with investigators, as there is with every informant. "[B]ut such risks are inherent in any system allowing, as it must, that search warrants may be issued on something less than a full trial of the existence of probable cause."

30

*Zucco*, 694 F.2d at 50 (internal quotation marks omitted).[11]

> ### b. The warrant application did not improperly exclude material information.

Seaway, nevertheless, argues that probable cause was lacking because Eckler failed to disclose to Judge Todd information concerning Raymond's criminal history, including that he was arrested in September 2015 for second degree rape, convicted for grand larceny in 2000, and arrested for failure to pay restitution in 2012. *E.g.*, Seaway's Opening Brief at 21-22.[12]

---

[11] That Raymond had not previously worked as an informant for the police does not make Judge Todd's reliance on his affidavit misguided. *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) ("[I]t is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy.")

[12] Seaway points to an additional 2007 conviction for attempted burglary and a 2000 conviction for unauthorized use of a motor vehicle, both of which he claims he uncovered by searching an online database. Seaway's Opening Brief at 21 n. 10. This Court should disregard these convictions as no evidence of them was presented below, nor does any reference to them appear in

31

Seaway did not raise this argument in his motion to suppress in the district court. Indeed, Seaway argued much the opposite, claiming that Judge Todd could and should have gleaned from "the face of the warrant application" that Raymond was "a criminal" and therefore less reliable. S.A. 73. Not once in his motion did Raymond reference any material that he claimed was withheld from the warrant application. The most to which Seaway is entitled, therefore, is plain error review. *See United States v. Wright*, 466 F.2d 1256, 1259 (2d Cir. 1972) (explaining that defendant "ha[d] no absolute right to have us rule upon [fourth amendment] issues raised for the first time on appeal" and suggesting that court could, in its discretion, review for plain error).

Even if, however, Seaway preserved this issue, it fails. The Supreme Court explained in *Franks v. Delaware*, 438 U.S. 154 (1978), that material misstatements or omissions in a search warrant application can, in some circumstances, compel suppression of evidence seized pursuant to the warrant. But to invoke this rule, "a defendant is required to show: (1) that there were intentional and material misrepresentations or omissions in

Seaway's appendix. To the extent this Court does consider the convictions, however, they do not render the warrant invalid for the reasons discussed *supra*.

32

the warrant affidavit, and (2) that the alleged falsehoods or omissions were necessary to the . . . probable cause finding." *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (internal quotation marks omitted). Seaway has not satisfied either criterion.

First, Seaway did not establish that Eckler was aware of the full scope of Raymond's criminal history when he applied for the search warrant, or that any of the alleged omissions were "intentional." Seaway would have been entitled to an evidentiary hearing on this issue had he made in the district court a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit." *Falso*, 544 F.3d at 125 (quoting *Franks*, 438 U.S. at 171). Seaway does not identify any evidence that Eckler acted knowingly or recklessly. His *Franks* claim thus fails on that basis alone. *See*, e.g., *United States v. Giordano*, 172 F. App'x 340, 342 (2d Cir. 2006) ("Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof.'" (*quoting Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)).

Second, none of the alleged omissions were material, nor would their inclusion in the affidavit have undermined Judge Todd's finding of probable

33

cause. Raymond, in his affidavit, admitted that he was "locked up here at the jail" as a result of "ha[ving] a girlfriend . . . who was 13 years old." S.A 66. The application, therefore, made clear to Judge Todd that Raymond had been charged with a serious offense involving child exploitation. The specific charges brought against him and the procedural posture of his case would not have changed the probable cause calculus.

Furthermore, prior criminal conduct does not necessarily make an informant unreliable. Indeed, this Court (and others) routinely have upheld warrants even when based on the allegations of informants who previously had been convicted of crimes and have rejected claims that the omission of an informant's criminal history requires suppression. *See, e.g, United States v. Fermin*, 32 F.3d 674, 676 (2d Cir. 1994), *abrogated on other grounds, Bailey v. United States*, 516 U.S. 137, 144 (1995) (misstatement of informant's criminal history did not undermine probable cause finding); *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (same); *Canfield*, 212 F.3d at 720 (informant's criminal history did not undermine probable cause finding); *see also United States v. Burston*, 159 F.3d 1328, 1333-34 (11th Cir. 1998) (denying *Franks* challenge based on failure to provide full details of informant's criminal history); *United States v. Rumney*, 867 F.2d 714, 720-21 (1st Cir. 1989) (same); *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983)

34

(same). Raymond's crimes – none of which are alleged to have required proof of fraud or dishonesty – are no different, particularly where (as explained *supra*), Raymond's allegations already contained numerous other indicia of reliability. *See Rumney*, 867 F.2d at 720 (discounting informant's criminal history in part because the omitted crimes were not "ones involving perjury or false statements" and because the criminal history "had no bearing on [the informant's] intimate knowledge of the crime").

While unclear, Seaway nonetheless appears to argue that had Judge Todd known about the pending rape charges against Raymond, he would have known Raymond was "sexually interested in underage females," thus inferring that some child pornography on Seaway's computer was actually Raymond's, and thus concluding that Raymond was deflecting blame to Seaway in order to protect himself. Seaway's Opening Brief at 22-23. Raymond's sexual interest in minors, however, was self-evident in his affidavit given his admitted relationship with a 13-year-old girl, and Seaway fails to explain how any of the allegedly omitted information would have improved Judge Todd's understanding of Raymond's motives.

Furthermore, Seaway's theory is illogical. Even assuming Raymond placed child pornography on

35

Seaway's computer,[13] there is nothing in the record to suggest that police suspected Seaway before Raymond notified them. Raymond, therefore, had no reason to believe that police would have discovered the images on their own, and would have increased the risk to himself by directing them to Seaway's computer. Moreover, even if all of the child pornography had belonged to Raymond, a warrant was still appropriate because there was still probable cause that evidence of illegal conduct would be on Seaway's computer, regardless of whether he was responsible for it.

### c. Raymond's affidavit does not conflict with Eckler's affidavit.

Seaway tries to discredit Raymond by pointing to what he claims are discrepancies between Eckler's affidavit and Raymond's. His attempts to do so are unpersuasive.

Seaway first argues that Eckler mischaracterized Raymond's testimony when he stated that Raymond "alleged . . . that his uncle Clif had sexually abused a child," S.A. 63, when in fact what Raymond said was that Seaway claimed

---

[13] Raymond admits in his affidavit that he kept files containing pictures of "old girlfriends" on Seaway's computer, but does not state the ages of the girls or whether they were pornographic in nature. S.A. 66.

36

to have photographed himself "playing" with his seven year old daughter's friend, *id.* at 66. Seaway's Opening Brief at 25-26. Seaway never explains, however, how else those remarks should be construed. Furthermore, even if Eckler mischaracterized Raymond's affidavit, he attached the Raymond affidavit to his warrant application. Judge Todd, therefore, was free to review Raymond's affidavit, and Eckler's post-interview summary of that affidavit could not have mislead Judge Todd.

Seaway also argues that Eckler's assertion that child pornography collectors rarely dispose of their collections, *id.* at 64, conflicts with Raymond's claim that Seaway misplaced the DVD depicting his daughter's friend. Seaway's Opening Brief at 26-27. Seaway ignores, however, the at least 100 child pornographic images that Raymond claimed he observed on Seaway's computer, to which Seaway appeared to have easy access. Likewise, according to Raymond, Seaway was trying to find the missing DVD, thus demonstrating its importance to him. S.A. 66. And finally, even if Seaway's conduct did not precisely match all of the characteristics Eckler attributed to child pornography collectors generally, so minor a discrepancy would not have materially changed the "totality of the circumstances" that Judge Todd was required to consider.

37

The district court, therefore, correctly found that Judge Todd had a substantial basis for concluding that there was probable cause to search Seaway's home. The district court's denial of Seaway's motion to suppress should therefore be affirmed on that basis alone.

## 2. The good-faith exception to the exclusionary rule applied here.

Even if, however, there was not a substantial basis for finding probable cause, the district court correctly found that the officers who searched Seaway's home relied in good faith on the search warrant and acted reasonably.

Seaway argues that the good faith doctrine should not apply because Judge Todd was "misled when Investigator Eckler failed to provide the full extent of Raymond's criminal history in the search warrant application." Seaway's Opening Brief at 33. Once again, Seaway failed to raise this argument below, and once again, it is meritless. As explained *supra*, there is no evidence that Eckler knew any additional details concerning Raymond's criminal history when he submitted the warrant application, and even if he had, those details were immaterial. *See, e.g., Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991) (explaining that for good faith defense to be lost, officers must have "materially misled" the issuing magistrate); *United States v. Comer*, 565 F. App'x 729, 731-34

38

(10th Cir. 2014) (failure to include informant's criminal history in warrant application did not trigger exception to good-faith doctrine). Likewise, although Seaway again claims that Eckler mischaracterized Raymond's affidavit regarding Seaway's alleged abuse of his daughter's friend, as explained *supra*, Eckler attached Raymond's full affidavit to the warrant application, thus obviating any misimpressions his summary of the affidavit may have created.

Seaway also makes the perfunctory argument that because the warrant application was "so lacking in indicia of probable cause," any reliance upon it was unreasonable. Seaway's Opening Brief at 33-34 (internal quotation marks omitted). The "lacking in indicia of probable cause" exception, however, is narrow and reserved primarily for those instances in which an affidavit is "bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations." *Clark*, 638 F.3d at 103. Raymond's affidavit, however, was far from "barebones." As explained previously, it provided details concerning specific images he viewed and his conversations with Seaway.

Therefore, even had the district court's probable cause finding been mistaken, its denial of Seaway's motion to suppress nonetheless should be affirmed.

\*\*\*

39

For the reasons stated above, the district court properly declined to suppress the evidence seized from Seaway's home. Moreover, because there was no illegal search and seizure, there were no illegal fruits of that seizure. Seaway's argument that the statements he gave the day of the search should be suppressed, therefore, fails as well. Seaway's Opening Brief at 34.

**POINT II: The District Court Did Not Commit Error, Plain or Otherwise, By Applying U.S.S.G. § 2G2.1(b)(4) at LaMere's Sentencing.**

## A. Governing Law.

Under U.S.S.G. § 2G2.1(b)(4), a district court is required to increase a defendant's Guidelines offense level by four levels if the underlying conviction involves a child pornography offense and "the offense involved material that portrays . . . sadistic or masochistic conduct or other depictions of violence."

In *United States v. Freeman*, 578 F.3d 142 (2d Cir. 2009), this Court explained the general framework for applying U.S.S.G. § 2G1.2:[14]

---

[14] In *Freeman*, as with some of the other cases cited below, the issue was the applicability of U.S.S.G. § 2G2.2(b)(4), which governs pornography

40

First, the determination of whether an image is sadistic . . . is an objective one . . . the purpose of the act depicted and the reaction of the actor are irrelevant to this determination. A sentencing court also need not determine whether the people depicted in the image are deriving sexual pleasure from the infliction of pain; nor need it gauge whether the viewer of the picture is likely to derive pleasure from the fact that the image displays painful sexual acts. There is also no need for the sentencing court to determine either why the defendant possessed the images or whether he derived pleasure from them. In sum, the subjective intent of those depicted in the image and of those who view the image are entirely irrelevant to the application of this enhancement. All that matters, as the text of the relevant provision of the Guidelines makes clear, is whether the material portrays sadistic or masochistic

---

trafficking offenses, whereas LaMere was sentenced under U.S.S.G. § 2G2.1(b)(4), which applies to child exploitation offenses. The relevant language in both provisions, however, is identical, and as such, cases interpreting U.S.S.G. § 2G2.2(b)(4) are equally applicable to cases interpreting U.S.S.G. § 2G2.1(b)(4). *See United States v. Nesmith*, 866 F.3d 677, 680 n. 2 (5th Cir. 2017).

41

conduct or other depictions of violence . . . . This determination must be made based on an objective analysis of the material in question.

Second, if a sentencing court finds that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor, that court need not make any additional findings in order to impose a four-level enhancement . . . .

*Id.* at 146 (internal quotation marks, citations and brackets omitted).

## B. Standard of Review.

Before sentencing, LaMere's counsel filed a sentencing memorandum in which he took the position that "[t]he advisory guidelines call for life in prison," a calculation that assumes the applicability of U.S.S.G. § 2G2.1(b)(4), and further stated that "[w]e are further advised the advisory guidelines provide under these particular circumstances that the sentence may be sixty years," which is the Guidelines sentence recommended in LaMere's PSR. L.A. 70-71. Moreover, when asked, during the sentencing hearing, if he had any objections to the PSR's Guidelines calculations, LaMere's counsel indicated that he did not. *Id.* at 77. LaMere's

42

claim that the Guidelines were miscalculated is therefore subject to plain error review. *See United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (plain error applied where defendant failed to object to district court's Guidelines calculations).

Under plain error review, a defendant must show:

(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected [his] substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'

*United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (brackets in original). "[R]eversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

43

**C. Discussion.**

The district court did not commit error, plain or otherwise, by applying a four-level enhancement under U.S.S.G. § 2G2.1(b)(4).

As LaMere correctly observes, a number of jurisdictions have held that "cases involving the sexual penetration of prepubescent children are inherently sadistic" because "from the standpoint of an objective viewer, such cases unquestionably involve the depiction of a sexual act that is likely to cause pain in one so young." *United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012); *see also United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) ("We have previously held that a district court can apply the sadistic conduct enhancement any time images portray the penetration of prepubescent children by adult males because such images are necessarily pleasurable for the participant and painful for the child."); *United States v. Johnson*, 450 F.3d 831, 834 (8th Cir. 2006) ("[S]exual penetration of a minor female by an adult male is per se sadistic."); *United States v. Hall*, 312 F.3d 1250, 1262 (11th Cir. 2002) ("[T]his Circuit's recent precedent establishes that a sentencing enhancement . . . for the portrayal of sadistic conduct, is warranted when cases involve images displaying an adult male vaginally or anally penetrating a young child"); *United States v. Lyckman*, 235 F.3d 234, 239 n.22 (5th Cir. 2000) ("One hardly requires a medical degree to

44

ascertain that vaginal intercourse with an adult male would involve pain, both physical and emotional, for a young girl"); *United States v. Johnson*, 680 F. App'x 194, 198 (4th Cir. 2017) ("Where pornographic images portray the sexual penetration of prepubescent children, courts consistently find the images inherently sadistic because they depict sexual acts that are likely to cause pain in one so young." (internal quotation marks omitted)).

While Second Circuit has not expressly adopted such a per se rule, it should take this opportunity to do so. Indeed, this Court has repeatedly upheld findings of sadistic conduct based on little more than the fact of penetration, *Freeman*, 578 F.3d at 145-46; *United States v. Wilkinson*, No. 99-1078, 1999 WL 1254511, at *1 (2d Cir. Dec. 8, 1999); *United States v. Jones*, Nos. 99-1689, 99-1690, 2000 WL 357672, at *2 (2d Cir. Apr. 6, 2000); *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996). A per se rule also comports with the common sense notion that penetration will inevitably be painful to a child, and adopting such a rule would avoid miring district courts with the lurid and nearly impossible task of distinguishing between different types of penetration. And as illustrated above, numerous circuits have adopted some variation of a per se rule, and the government is aware of none that have affirmatively declined. Precedent, practicality, and the overwhelming weight of out-

45

of-Circuit authority, therefore, all favor this Court holding that any image depicting the penetration of a child (especially a prepubescent child) is per se sadistic under U.S.S.G. § 2G2.1(b)(4).

LaMere, however, argues that that a per se rule for penetration applies only where the penetration is the result of an "adult penis," whereas the images portraying LaMere show her penetrating V3 with her fingers. LaMere's Opening Brief at 9. At least two circuit courts, however, have upheld the application of U.S.S.G. § 2G2.1(b)(4) in instances involving digital penetration. *Johnson*, 680 F. App'x at 198 (upholding per se application of U.S.S.G. § 2G2.1(b)(4) where penetration was digital); *United States v. Morgan*, 842 F.3d 1070, 1076 (8th Cir. 2016) (finding that penetration occurred where, among other things, "[t]he images at issue show [the defendant's] fingers placed on the inside of the child's labia, spreading them to expose her genitalia"); *cf. United States v. Pappas*, 715 F.3d 225, 228 (8th Cir. 2013) (upholding application of U.S.S.G. § 2G2.1(b)(4) where district court based sadism finding in part on image of child being penetrated with finger); *United States v. Norton*, 557 F. App'x 615, 617 (8th Cir. 2014) (affirming application of enhancement where images depicted "digital penetration and manipulation of the victim's genitals").

Moreover, this Court has repeatedly found that penetration of a prepubescent child with a foreign

46

object is sadistic, *see Delmarle*, 99 F.3d at 83; (penetration through use of "cylindrical object" found sufficient); *Wilkinson*, 1999 WL 1254511, at *1 (penetration with carrot found sufficient); *Jones*, Nos., 2000 WL 357672, at * 2 (images depicting "insertion of objects in the vaginas of prepubescent girls" (among others) found to be sadistic), and an adult finger is simply another foreign object. LaMere insists, nonetheless, that there is no proof that her "finger in any way is comparable in length or girth" of a penis or the types of objects previously found to be inherently painful. LaMere's Opening Brief at 9. An adult finger, however, is as capable of causing pain as any other object, particularly where being manipulated by an adult for the purposes of producing child pornography and inserted into a child as young as eight (V3's age at the time).

LaMere appears to propose a rule that would require district courts to determine on a case-by-case basis whether the unwanted penetration of a child's vagina or anus is sadistic depending on the size of the object inserted. In reality, a depiction of all such conduct for the purpose of sexual gratification is inherently sadistic, especially with pre-pubescent victims, and district courts should treat it as such.

LaMere, furthermore, cites no authority for the proposition that there is a bright-line circumference that an object has to surpass. In the

47

absence of controlling case law, any error on the district's court part cannot be considered plain. *See, e.g., United States v. Irving*, 554 F.3d 64, 78 (2d Cir. 2009) ("An error is 'plain' if the ruling was contrary to law that was clearly established by the time of the appeal."); *United States v. Sica*, 676 F. App'x 81, 86 (2d Cir.), *cert. denied*, 138 S. Ct. 181 (2017) (finding no plain error in absence of controlling precedent).

Finally, images are "sadistic" even if they do not necessarily involve penetration or inflict physical pain. *United States v. Maurer*, 639 F.3d 72, 80 (3d Cir. 2011) (enhancement for sadistic conduct "not limited to circumstances where the pain that would result from the depicted conduct is the result of sexual penetration . . . ."); *United States v. Comeaux*, 445 F. App'x 743, 745 (5th Cir. 2011) ("[A]lthough acts that inflict pain upon the child victim are sadistic and violent per se within the meaning of the guidelines, an absence of physical pain is not per se outside the ambit of the enhancement for sadistic acts under § 2G2.1(b)(4)"). Emotional suffering or humiliation also suffices. *See Corp*, 668 F.3d at 390; *Comeaux*, 445 F. App'x at 745. Here, in addition to the images which depicted digital penetration, there were images and a video of "V3 performing oral sex on Seaway." PSR at ¶ 24. Content depicting a child at ages five and eight performing oral sex on an adult male, and the attendant suggestion that the child is therefore a

48

willing participant in the activity, is itself
humiliating, degrading, and emotionally
traumatizing. *See United States v. Coates*, 462 F.
App'x 199, 205 (3d Cir. 2012) (upholding U.S.S.G.
§ 2G2.1(b)(4) enhancement where image was of the
defendant "placing his erect penis in his daughter's
mouth"); *United States v. Hewitt*, 326 F. App'x 756,
759 (5th Cir. 2009) (pictures of children performing
oral sex, among other things, held to be sadistic).[15]
The district court's application of U.S.S.G.
§ 2G2.1(b)(4) is thus supportable on that ground
alone.

---

[15] LaMere cites the Sixth Circuit's decision in
*United States v. Cover*, 800 F.3d 275 (6th Cir.
2015), as being to the contrary. But in *Cover*, the
Sixth Circuit based its decision to reverse the
district court's application of the enhancement
largely on the fact that the victim was 13 years old
and not prepubescent, and went on to note that
"there is no denying that many eighth-graders
these days voluntarily engage in oral sex,
presumably without experiencing pain." *Id.* at
280. The same cannot be said of an eight-year old
child.

49

## POINT III: LaMere's Sentence Was Substantively Reasonable.

### A. Governing Law and Standard of Review.

Substantive reasonableness review is concerned with "assess[ing] the length of the sentence imposed in light of the § 3553(a) factors." *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks and brackets omitted). The substantive reasonableness standard "provide[s] a backstop for those few cases" where allowing the sentence imposed to stand "would . . . damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). These principles make clear that "'[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime.'" *United States v. Pope*, 554 F.3d 240, 244 (2d Cir. 2009) (*quoting United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008)).

### B. Discussion.

LaMere's 30-year prison sentence was not substantively unreasonable. For one, her sentence was not "shockingly high" given the gravity of the offense for which she as convicted, and was a

50

fraction of many of the sentences this Court has upheld in other cases involving the production of child pornography. *See, e.g., United States v. Brown*, 843 F.3d 74, 82-84 (2d Cir. 2016) (noting that "a 60 year sentence . . . is within the realm of punishments that this Court has upheld as reasonable for production of child pornography"); *United States v. McCoy*, 692 F. App'x 17 (2d Cir.), *cert. denied*, 138 S. Ct. 278 (2017) (upholding 80 year sentence for production of child pornography); *United States v. Hamilton*, 548 F. App'x 728, 730-31 (2d Cir. 2013) (upholding 150 year sentence). LaMere's sentence – which was half of what the Guidelines recommended – was comparatively short.

LaMere raises on appeal many of the same arguments she raised in the district court, claiming that her mental handicap, her poor health, her history of abuse, Seaway's corrupting influence, and other related factors weighed in favor of a lower sentence. *See, e.g.*, LaMere's Opening Brief at 13-16. The district court acknowledged LaMere's "background and characteristics" and credited LaMere's claim that she was "susceptible" to Seaway's influence. L.A. 85. The court also granted LaMere a substantial downward variance as a result.[16] But the court

----

[16] LaMere attempts to downplay the significance of the variance the district court granted her, claiming that "the fact that she

51

found that these mitigating considerations were outweighed, at least in part, by the "number of times [LaMere] participated in the victimization of victim 3, from 2010 to 2013," L.A. 85, a reference to the 225 files containing child pornography that she and Seaway created together.

The district court, therefore, had sufficient grounds for imposing a sentence that fell between the 15-year minimum that LaMere requested and the 60-year sentence that the Guidelines recommended. LaMere undoubtedly would have preferred that the district court had weighed the relevant sentencing factors in a manner that resulted in a shorter sentence. But "the particular weight to be afforded aggravating and mitigating

---

received [two 30-year] concurrent sentences is likely more a reflection of the fact that the charges are indistinguishable on the facts of this case, than mercy on the part of the district court." LaMere's Opening Brief at 20. It is, however, "well settled that separate punishments are authorized for a substantive crime and conspiracy to commit the same crime," and the imposition of consecutive sentences in such instances is not substantively unreasonable. *United States v. Escobar*, 462 F. App'x 58, 68 (2d Cir. 2012) (citing *Callanan v. United States*, 364 U.S. 587, 591-95 (1961)). Thus, the district court was entitled to impose two consecutive sentences equaling 60 years in total, but declined to do so.

52

factors is a matter firmly committed to the discretion of the sentencing judge," *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted), and LaMere has failed to establish that the district court abused its discretion, *see, e.g., United States v. Bloom*, 366 F. App'x 285, 290 (2d Cir. 2010) (rejecting defendant's argument that "his mental impairments should have weighed in favor of a more lenient sentence" because he was in effect asking the court to "reevaluate the factors under consideration in the district court's § 3553(a) analysis").

LaMere's reliance on *United States v Dorvee*, 616 F.3d 174 (2d Cir. 2010), and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), is unavailing. *Dorvee* and *Jenkins* involved the distribution and transportation of child pornography, respectively, not its production, and this court has "repeatedly upheld lengthy sentences in production cases post-*Dorvee*, recognizing a distinction between production and possession, particularly in production cases involving sexual contact with victims." *Brown*, 843 F.3d at 83 (opinion of Droney, J.); *see also United States v. Rafferty*, 529 F. App'x 10, 13 (2d Cir. 2013) (finding that the defendant's "*production* of child pornography . . . is distinguishable from the conduct in *Dorvee*" (italics in original)). Indeed, this Court's decisions in *Dorvee* and *Jenkins* were both driven largely by a recognition of the distinction between those who

53

distribute pornography and those who have "actually engaged in sexual conduct with a minor," and the "irrationality" of punishing the former as harshly as the latter. *Dorvee*, 616 F.3d at 187; *Jenkins*, 854 F.3d at 189. LaMere, however, did engage in sexual conduct with a minor, meaning she fell within the class of defendants for which this Court has held higher sentences should be reserved.[17]

LaMere's 30-year term of imprisonment should therefore be affirmed.

---

[17] In *United States v. Sawyer*, 672 F. App'x 63, 66 (2d Cir. 2016), to which LaMere also cites, this Court vacated a 30-year sentence for the production of child pornography on the grounds that it was substantively unreasonable. But in *Sawyer*, this Court's decision was based largely on "the exceptional horrors of Sawyer's childhood," including multiple instances of abuse. *Id.* at 67. By contrast, LaMere's upbringing was, in her words, "'beautiful.'" PSR at ¶ 63.

54

## CONCLUSION

Seaway's and LaMere's judgments of conviction and sentences should be affirmed in all respects.

Dated:  Syracuse, New York
        June 14, 2019

                Respectfully submitted,

                GRANT C. JAQUITH
                *United States Attorney for the*
                *  Northern District of New York*
                *Attorney for Appellee*

                s/ *Thomas R. Sutcliffe*
        By:     THOMAS R. SUTCLIFFE
                *Assistant United States Attorney*

LISA M. FLETCHER
*Assistant United States Attorney*
*of Counsel*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are approximately 10,708 words in the brief.

GRANT C. JAQUITH
*United States Attorney for the*
  *Northern District of New York*

s/ *Thomas R. Sutcliffe*
By: THOMAS R. SUTCLIFFE
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE
BY NEXTGEN CM/ECF**

UNITED STATES OF AMERICA
v.
SEAWAY

Docket Nos. 18-1468 (L),
18-1916 (con), 18-2795 (con)

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on June 14, 2019, she served a copy of the appellee's Brief on the United States Court of Appeals for the Second Circuit and counsel for appellants, Melissa A. Tuohey, AFDP, and Robert G. Wells, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

_s/ Deanna Lieberman_
Deanna Lieberman